UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| JEFFERSON D. HUGHES, III<br>ASSOCIATE JUSTICE OF THE<br>LOUISIANA SUPREME COURT | CIVIL ACTION |
| VERSUS | NO. 15-7165 |
| BERNETTE J. JOHNSON, CHIEF<br>JUSTICE OF THE LOUISIANA<br>SUPREME COURT, ET AL. | SECTION "R" (2) |

# **ORDER AND REASONS**

Chief Justice of the Louisiana Supreme Court Bernette J. Johnson and Associate Justices Greg G. Guidry, Marcus R. Clark, and John L. Weimer (collectively, Defendant Justices) move to dismiss plaintiff Justice Jefferson D. Hughes' complaint under Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure.[1]  Defendant Justices move separately to dismiss the complaint brought by intervening plaintiffs—Citizens for Clean Water and Land PAC, LLC, Vincent Charles Bundrick, Cajun Pride, Inc., Robert L. Walton, Bonnie Walton, John Keith Lamm, and Deborah Broussard Lamm (collectively, Intervenors).[2]  For the following reasons, the Court finds that

---

[1]   R. Doc. 13.
[2]   R. Doc. 28.

plaintiffs' claims are barred by the Eleventh Amendment to the United States Constitution. Defendant Justices' motions to dismiss are therefore granted, and Justice Hughes and Intervenors' claims are dismissed without prejudice.

## I. BACKGROUND

### A. Justice Hughes

Justice Hughes' complaint centers arounds two cases that the Louisiana Supreme Court declined to hear—*Robert L. Walton, et al. v. Exxon Mobil Corp., et al.,* No. 2015-C-0569 (La.), and *Vincent Charles Bundrick, et al., v. Anadarko Petroleum Corp., et al.*, No. 2015-C-0569 (La.). In both cases, Justice Hughes was recused from ruling on plaintiffs' applications for writs of certiorari by order of his fellow Justices, pursuant to La. Code Civ. Proc. art. 159.[3] Justice Hughes alleges that, in voting to recuse him from

---

[3] Article 159 provides:

> When a written motion is filed to recuse a justice of the supreme court, he may recuse himself or the motion shall be heard by the other justices of the court.
>
> When a justice of the supreme court recuses himself, or is recused, the court may (1) have the cause argued before and disposed of by the other justices, or (2) appoint a judge of a district court or a court of appeal having the qualifications of a justice of the supreme court to act for the recused justice in the hearing and disposition of the cause.

2

*Walton* and *Bundrick*, the four Defendant Justices violated Justice Hughes' rights under the First and Fourteenth Amendments to the U.S. Constitution. Justice Hughes sues Defendant Justices in their official capacities.[4]

Justices of the Louisiana Supreme Court are elected to their posts by popular vote. Justice Hughes was elected in 2012.[5] According to Justice Hughes' complaint, Clean Water, a political action committee, spent $487,000 supporting Justice Hughes' bid for a seat on the Court.[6] This money was not given directly to Justice Hughes or his campaign committee, but instead took the form of "independent expenditures" in support of Justice Hughes' candidacy.[7] In accordance with federal election regulations, Justice Hughes did not coordinate or communicate with Clean Water during the 2012 election.[8] The $487,000 Clean Water spent in support of Justice Hughes constituted 16 percent of all campaign spending in the eight-candidate race.[9]

Clean Water is, according to Justice Hughes' complaint, devoted to educating the public about land and water pollution problems.[10] The law

---

[4] R. Doc. 1 at 1.
[5] *Id.* at 8.
[6] *Id.* at 10.
[7] *Id.*
[8] *Id.* at 3.
[9] *Id.* at 5
[10] *Id.*

3

firm Talbot Carmouche, & Marcello—which represents the plaintiffs in both *Walton* and *Bundrick*—contributed $360,000 to Clean Water in 2012.[11] The complaint alleges, however, that $275,000 of this $360,000 was spent on "issue advocacy" designed to influence public opinion on environmental issues, rather than on candidate-specific spending.[12]

Justice Hughes won his election in December 2012 and began service as a Louisiana Supreme Court Justice.[13] In March 2015, following unfavorable rulings at the trial and appellate levels, plaintiffs in both *Walton* and *Bundrick* filed applications for writs of certiorari to the Louisiana Supreme Court.[14] Approximately a month later, defendants in both cases filed motions to recuse Justice Hughes.[15] The four Defendant Justices voted to grant the *Walton* and *Bundrick* defendants' recusal motions on November 12, 2015.[16] The order recusing Justice Hughes was entered without written reasons, and it prevented the Justice from hearing argument in the two cases.[17] On November 16, 2015, with Justice Hughes recused, the Louisiana Supreme Court denied plaintiffs' writ applications in both *Walton* and

---

11     *Id.*
12     *Id.* at 11.
13     *Id.* at 10.
14     *Id.* at 12.
15     *Id.*
16     *Id.*
17     *Id.*

4

*Bundrick. See Walton v. Exxon Mobil Corp.*, 184 So.3d 25 (La. 2015); *Bundrick v. Anadarko Petroleum Corp.*, 184 So.3d 24 (La. 2015).

Justice Hughes alleges that, in forcing his recusal, the Defendant Justices violated his rights under the First and Fourteenth Amendments. According to Justice Hughes, the recusal orders violated his First Amendment rights by preventing him from communicating his electoral message to the public, for fear that the people he communicates with will contribute to political action committees that support Justice Hughes, leading to more recusals.[18] Justice Hughes argues that his Fourteenth Amendment rights have been violated because the Defendant Justices have "singl[ed] him out for unfavorable treatment without adequate justification" and "arbitrarily recus[ed] him from two cases without explanation or recourse."[19] Justice Hughes brings his claims under 42 U.S.C. § 1983.[20]

In his prayer for relief, Justice Hughes seeks four remedies: 1) a declaratory judgment that the recusal orders are unconstitutional and unenforceable; 2) a declaratory judgment that the recusals violated Justice Hughes' First Amendment rights; 3) an order enjoining Defendant Justices from recusing Justice Hughes in *Walton* and *Bundrick*; and 4) an order

---

[18]   *Id.* at 14.
[19]   *Id.* at 15.
[20]   *Id.* at 1, 4.

enjoining Defendant Justices from recusing Justice Hughes or any other Louisiana Supreme Court Justice based on contributions to political action committees.[21]

### B. Intervenors

Intervenors are Clean Water and the six plaintiffs in *Walton* and *Bundrick*: Vincent Charles Bundrick, Cajun Pride, Inc., Robert L. Walton, Bonnie Walton, John Keith Lamm, and Deborah Broussard Lamm. Intervenors' allegations substantially mirror Justice Hughes', with two exceptions. First, intervenors allege that their own constitutional rights have been violated by Justice Hughes' recusal. Second, besides challenging Justice Hughes' recusal, intervenors challenge the alleged recusal of Justice Jeannette Theriot Knoll in the same cases.[22] Intervenors, like Justice Hughes, bring their claims under 42 U.S.C. 1983 and seek both injunctive and declaratory relief.[23]

### C. Motions to Dismiss

Defendant Justices have moved to dismiss Justice Hughes' complaint and, separately, to dismiss Intervenors' complaint pursuant to Federal Rules

---

[21]   *Id.* at 15.  Justice Hughes also seeks attorney's fees.
[22]   *Id.* at 21.
[23]   *Id.* at 21-22.

6

of Civil Procedure 12(b)(1) and 12(b)(6).[24] Because the Court finds that plaintiffs' claims are barred by Eleventh Amendment immunity, the Court does not reach Defendant Justices' arguments under Rule 12(b)(6).

## II.   LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(1) requires dismissal of an action if the court lacks jurisdiction over the subject matter of the plaintiff's claim. Motions submitted under Rule 12(b)(1) allow a party to challenge the court's subject matter jurisdiction based upon the allegations on the face of the complaint. *Barrera-Montenegro v. United States*, 74 F.3d 657, 659 (5th Cir. 1996); *see also Lopez v. City of Dallas, Tex.*, No. 03-2223, 2006 WL 1450420, at *2 (N.D. Tex. May 24, 2006).  In ruling on a Rule 12(b)(1) motion to dismiss, the court may rely on (1) the complaint alone, presuming the allegations to be true; (2) the complaint supplemented by undisputed facts; or (3) the complaint supplemented by undisputed facts and by the court's resolution of disputed facts. *Den Norske Stats Oljeselskap As v. HeereMac Vof*, 241 F.3d 420, 424 (5th Cir. 2001); *see also Barrera-Montenegro*, 74 F.3d at 659.  The plaintiff bears the burden of demonstrating that subject

---

[24]   R. Doc. 13; R. Doc. 31.

7

matter jurisdiction exists. *See Paterson v. Weinberger*, 644 F.2d 521, 523 (5th Cir. 1981).

When examining a factual challenge to subject matter jurisdiction that does not implicate the merits of plaintiff's cause of action, the district court has substantial authority "to weigh the evidence and satisfy itself as to the existence of its power to hear the case." *Arena v. Graybar Elec. Co.*, 669 F.3d 214, 223 (5th Cir. 2012). Accordingly, the Court may consider matters outside the pleadings, such as testimony and affidavits. *See Superior MRI Servs., Inc. v. All. Healthcare Servs., Inc.*, 778 F.3d 502, 504 (5th Cir. 2015). A court's dismissal of a case for lack of subject matter jurisdiction is not a decision on the merits, and the dismissal does not necessarily prevent the plaintiff from pursuing the claim in another forum. *See Cox, Cox, Filo, Camel & Wilson, L.L.C. v. Sasol N. Am., Inc.*, 544 F. App'x 455, 456 (5th Cir. 2013).

### III. DISCUSSION

Although no party has raised the issue of Eleventh Amendment immunity, this Court may raise it sua sponte. *Ysleta del Sur Pueblo v. State of Tex.*, 36 F.3d 1325, 1336 (5th Cir. 1994) ("The State's omission, however, does not mean we are precluded from raising the issue sua sponte, because the Eleventh Amendment operates as a jurisdictional bar."); *see also*

*Jefferson v. Louisiana State Supreme Court*, 46 F. App'x 732, 732 (5th Cir. 2002) ("[E]leventh amendment immunity is a jurisdictional issue that cannot be ignored, for a meritorious claim to that immunity deprives the court of subject matter jurisdiction of the action."). "The Eleventh Amendment bars citizens of a state from suing their own state or another state in federal court unless the state has waived its sovereign immunity or Congress has expressly abrogated it." *Raj v. Louisiana State Univ.*, 714 F.3d 322, 328 (5th Cir. 2013) (internal citations omitted). Section 1983 does not abrogate Eleventh Amendment immunity, *Khan v. S. Univ. & Agric. & Mech. Coll. Bd. of Supervisors*, No. 03-30169, 2005 WL 1994301, at *3 (5th Cir. Aug. 19, 2005), and Louisiana has explicitly asserted its sovereign immunity by statute. La. Rev. Stat. § 13:5106(A) (2010) ("No suit against the state or a state agency or political subdivision shall be instituted in any court other than a Louisiana state court.").

The Louisiana Supreme Court, as an agency of the state, enjoys the benefits of Louisiana's Eleventh Amendment protection. *See Jefferson*, 46 F. App'x at 732 ("The Eleventh Amendment clearly bars Jefferson's § 1983 claims against the Louisiana Supreme Court, which is a branch of Louisiana's state government."). And the Supreme Court's immunity extends to its Justices when they are, as here, sued in their official capacity. *See Wallace*

9

*v. Texas Tech University*, 80 F.3d 1042, 1047 n.3 (5th Cir. 1996) ("Suits against state officials in their official capacity are considered to be suits against the individual office, and so are generally barred as suits against the state itself."); *Summers v. Louisiana*, No. 13-4573, 2013 WL 3818560, at *4 (E.D. La. July 22, 2013) (holding that an official capacity claim against a state court judge "would in reality be a claim against the state itself, and . . . would be barred by the Eleventh Amendment"); *see also Davis v. Tarrant Cty., Tex.*, 565 F.3d 214, 228 (5th Cir. 2009) ("Texas judges are entitled to Eleventh Amendment immunity for claims asserted against them in their official capacities as state actors.").

Because the Defendant Justices are protected by Eleventh Amendment immunity—and that immunity is undermined by neither abrogation nor consent—plaintiffs' claims may proceed only if they fall under the limited exception articulated in *Ex parte Young*, 209 U.S. 123 (1908). "In determining whether the doctrine of *Ex parte Young* avoids an Eleventh Amendment bar to suit, a court need only conduct a straightforward inquiry into whether the complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective." *Verizon Maryland, Inc. v. Pub. Serv. Comm'n of Maryland*, 535 U.S. 635, 645 (2002) (internal quotations and modifications omitted).

The Court begins with the second question: is the relief requested by plaintiffs prospective? As noted, Justice Hughes and Intervenors each list four items in their prayers for relief,[25] and the lists are substantially similar. Both parties request declaratory judgments that the *Walton* and *Bundrick* recusal orders were unconstitutional and violated the parties' rights. As noted, however, neither *Walton* nor *Bundrick* is presently before the Louisiana Supreme Court. *See Walton v. Exxon Mobil Corp.*, 184 So.3d 25 (La. 2015) (denying application for writ of certiorari); *Bundrick v. Anadarko Petroleum Corp.*, 184 So.3d 24 (La. 2015) (same). In other words, plaintiffs seek declarations that Defendant Justices' *past* conduct violated federal law. These claims are therefore retrospective, and *Young* will not save them. *See Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 146 (1993) ("[T]he [*Young*] exception is narrow: It applies only to prospective relief, [and] does not permit judgments against state officers declaring that they violated federal law in the past."); *Green v. Mansour*, 474 U.S. 64, 68 (1985) ("We have refused to extend the reasoning of *Young*, however, to claims for retrospective relief."); s*ee also Walker v. Livingston,*

---

[25] Justice Hughes also seeks attorney's fees under section 1983. R. Doc. 1 at 16.

11

381 F. App'x 477, 479 (5th Cir. 2010) ("Declaratory relief is within *Young*'s purview, but only when violations of federal law are threatened or ongoing.").

Plaintiffs' first requested injunction (to enjoin defendants from recusing Justice Hughes in *Walton* and *Bundrick*) fails for the same reason: the proposed injunction concerns past conduct. Therefore—to the extent the controversy is not simply moot—the claim is barred by Eleventh Amendment immunity.

Plaintiffs' final request for relief is different. Plaintiffs ask for a permanent injunction preventing the Defendant Justices from recusing any Louisiana Supreme Court Justice from a case "based on contributions to political action committees that supported" that Justice's election.[26] Here, plaintiffs ask the Court to restrain future conduct, and the claim therefore meets *Young*'s "prospective relief" requirement. However, plaintiffs have failed to allege an "ongoing" violation of federal law, and *Young* therefore remains inapplicable.

By their own terms, plaintiffs dispute the outcome of two decisions made on the same day to recuse a single Justice from considering two related writ applications, neither of which remained before the Louisiana Supreme

---

[26]    R. Doc. 1 at 15; R. Doc. 28 at 22.

Court at the time this suit was filed.[27]  The *Young* exception is limited, however, to "cases in which a violation of federal law by a state official is ongoing as opposed to cases in which federal law has been violated at one time or over a period of time in the past . . . ."  *Papasan v. Allain*, 478 U.S. 265, 277-78 (1986); *see also Cantu Servs., Inc. v. Roberie*, 535 F. App'x 342, 345 (5th Cir. 2013) (Under *Young*, plaintiff must show that the alleged violation of federal law "was not a 'one-time, past event' but an ongoing violation." (quoting *S & M Brands, Inc. v. Cooper*, 527 F.3d 500, 510 (6th Cir. 2008)).  The limited past conduct alleged in the complaints is insufficient to meet plaintiffs' burden to plausibly show an ongoing violation of plaintiffs' constitutional rights.

In *Cantu Servs., Inc. v. Roberie*, 535 F. App'x 342, 345 (5th Cir. 2013), the Fifth Circuit ruled that the plaintiff failed to allege an ongoing violation for purposes of *Young*.  In that case, Cantu, a vendor who lost a bid for a food-service contract, alleged that defendant state officials violated its

---

[27] Although Intervenors also allege that Justice Knoll was recused, this recusal was allegedly based on her husband's work as a plaintiff's attorney in "legacy" litigation that may be impacted by a ruling *Walton* and *Bundrick*. R. Doc. 28 at 15.  Justice Knoll's recusal therefore has no bearing on whether plaintiffs have alleged an ongoing violation of federal law under *Young* to support "a permanent injunction enjoining Defendants from recusing Justice Hughes and Knoll, and any other [Louisiana Supreme Court] Justice from a case based on contributions to political action committees that supported their respective elections." *Id.* at 28.

13

constitutionally-protected right to a fair bidding process. *Id.* at 345. Cantu sought an injunction, that would, among other things, prevent state officials from entering into future food service contracts that excluded Cantu. *Id.* Although the proposed injunction was clearly prospective, the court found that Cantu failed to demonstrate an ongoing violation because it demonstrated no "constitutionally protected interest that was continuing to be infringed by the State officials." *Id.* Instead, the court found that "[t]he award process terminated with the issuance of a new contract." *Id.* "Consequently, there [was] no ongoing violation of law remediable by prospective relief under *Ex Parte Young*." *Id.*

As in *Cantu*, the alleged constitutional violation at issue in this case has terminated; it ended when the Louisiana Supreme Court denied the writ applications in *Walton* and *Bundrick*. This conclusion is buttressed by plaintiffs' requested relief. Plaintiffs seek an injunction barring all recusals based on independent expenditures, no matter the size or context. Even assuming that a rule or practice of forced recusals based on independent expenditures violates the First Amendment, plaintiffs provide scant allegations—aside from recusal orders in these two linked cases, which were entered without written reasons—to support an inference that Defendant Justices have instituted such a rule, or that future recusals are likely. The

14

allegation of a lone, past violation of plaintiffs' rights is therefore insufficient to meet *Young*'s "ongoing" prong. *See Green*, 474 U.S. at 68 ("[D]eterrence interests are insufficient to overcome the dictates of the Eleventh Amendment."). Because *Young* does not apply to any of plaintiffs' claims, they are barred by the Eleventh Amendment and must be dismissed.[28]

---

[28] The Court notes that it lacks jurisdiction over at least some of the claims brought in this case by the six plaintiffs in *Walton* and *Bundrick* for a separate, independent reason. The *Rooker-Feldman* doctrine bars this court from deciding "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005). This doctrine has been repeatedly applied to bar suit by state-court litigants seeking review in federal court of a state judge's recusal determination. *See, e.g., Price v. Porter*, 351 F. App'x 925, 926 (5th Cir. 2009) (upholding dismissal under *Rooker-Feldman* of suit by state-court litigant claiming state judge should have been recused); *Smith v. Bender*, 350 F. App'x 190, 193 (10th Cir. 2009) ("[T]he *Rooker-Feldman* doctrine bars Mr. Smith from relitigating the refusal of the Justices of the Colorado Supreme Court to recuse from his appeal.").

## IV. CONCLUSION

For the reasons stated above, the Court GRANTS defendants' Motions to Dismiss. Accordingly, Justice Hughes' and Intervenors' claims are DISMISSED WITHOUT PREJUDICE.

New Orleans, Louisiana, this __20th__ day of October, 2016.

_____
SARAH S. VANCE
UNITED STATES DISTRICT JUDGE