UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| ASSOCIATE JUSTICE JEFFERSON D. HUGHES III, | * | CIVIL ACTION NO. 2:15-cv-07165 |
| Plaintiff, | * | JUDGE SARAH S. VANCE |
| VERSUS | * | MAGISTRATE JUDGE DANIEL E. KNOWLES, III |
| CHIEF JUSTICE BERNETTE J. JOHNSON, ASSOCIATE JUSTICE GREGG G. GUIDRY, ASSOCIATE JUSTICE MARCUS R. CLARK, AND ASSOCIATE JUSTICE JOHN L. WEIMER, | * | |
| Defendants. | * | |

*********************************************

### MEMORANDUM IN SUPPORT OF MOTION TO ALTER, AMEND OR VACATE JUDGMENT, AND FOR NEW TRIAL AND RECONSIDERATION UNDER RULE 59, AND FOR RELIEF FROM A JUDGMENT OR ORDER UNDER RULE 60, AND FOR LEAVE TO AMEND COMPLAINT IN INTERVENTION

Donald T. Carmouche, Bar #2226
Victor L. Marcello, Bar # 9252
John H. Carmouche, Bar #22294
William R. Coenen, III, Bar #27410
Todd J. Wimberley, Bar #34862
Brian T. Carmouche, Bar #30430
Ross J. Donnes, Bar #33098
D. Adele Owen, Bar #21001
Leah C. Poole, Bar #35092
Caroline H. Martin, Bar #33308
TALBOT, CARMOUCHE & MARCELLO
17405 Perkins Road
Baton Rouge, LA 70810
Phone: (225) 400-9991; Fax: (225) 448-2568

*Attorneys for Intervenors, Vincent Charles Bundrick, Cajun Pride, Inc., and Citizens for Clean Water and Land PAC, LLC*

I. THIS COURT MISINTERPRETS THE REQUIREMENTS OF THE *EX PARTE YOUNG* EXCEPTION

This Court applied the wrong standard in determining whether the *Ex parte Young* exception applies. The proper expression of the standard is set forth in the Fifth Circuit's decision in *Walker v. Livingston*, which held that the *Ex parte Young* exception applies "when violations of federal law ***are threatened*** or ongoing.¹ Further, the "requirement that the violation of federal law be ongoing is satisfied . . . . even if the threat [of a violation] is not yet imminent."² As shown below, even though proof of imminentness is not required, the threat here is indisputably imminent.

On October 14, 2016, just six days before this Court granted the Defendant Justices' motion to dismiss, Chevron U.S.A., Inc. ("Chevron") filed a motion to recuse Justice Hughes in the Louisiana Supreme Court ("LASC") writ proceeding entitled *Agri-South Group, L.L.C. et al. v. Exxon Mobil Corporation* (*Agri-South*), a legacy case involving the "subsequent purchaser rule."³ Chevron's motion relies on the LASC's prior rulings in the *Walton* and *Bundrick* cases and the aggregate contributions of all of the "plaintiff legacy attorneys" to the CCWL PAC.⁴ The Talbot, Carmouche and Marcello firm is **not** involved in *Agri-South,* but the plaintiff in *Agri-South* is represented by the Veron, Bice Palermo firm ("Veron, Bice"), one of the contributors to the CCWL PAC during the Hughes election cycle. Veron, Bice contributed $100,000 to the CCWL PAC, but as shown in its opposition to the motion to recuse filed with the LASC, a portion of this contribution was used for the non-Hughes expenditures arising from a public relations campaign designed to raise

---

¹381 Fed.Appx. 477, 478–79, 2010 WL 2465035, at *1 (5th Cir. 2010)(emphasis added).

²*Waste Management Holdings, Inc. v. Gilmore*, 252 F.3d 316, 330 (4th Cir. 2001), *Summit Medical Assocs., P.C. v. Pryor,* 180 F.3d 1326, 1338–1341 (11th Cir.1999), *cert. denied,* 529 U.S. 1012 (2000).

³*See* Exhibit A, Motion to Recuse Justice Hughes By Defendant/Applicant, Chevron U.S.A., Inc.

⁴*Id.*

public awareness of environmental issues.[5]

Further, on November 4, 2016, just fourteen days after this Court's ruling, the defendants in *Global Marketing Solutions, L.L.C., v. Blue Mill Farms, Inc., et al.*, simultaneously filed a writ application and motion to recuse Justice Hughes in the LASC.[6] As previously noted in the intervention complaint [Doc. 3-2, pgs. 5-6], writ proceedings were pending on the subsequent purchaser issue at the same time in the LASC in *Global Marketing*, *Walton* and *Bundrick*. Motions to recuse Justice Hughes in *Global Marketing*, *Walton* and *Bundrick* were all filed on the same day that the writ application in *Global Marketing* was denied by the LASC, thus rendering moot the motion to recuse Justice Hughes in *Global Marketing*. Justice Hughes participated in the *Global Marketing* ruling, dissenting along with Justice Weimer from the order denying Global Marketing's writ application. *Global Marketing* is now back (for a third time) before the LASC on a writ application involving a *res judicata* exception filed jointly by the defendants.[7] Even though Justice Hughes participated in the LASC's prior ruling on the subsequent purchaser rule in *Global Marketing*, the defendants seek his recusal.

As noted by the Eleventh Circuit in *Summit Medical Associates, P.C. v. Pryor*, "where there is a threat of future enforcement that may be remedied by prospective relief, the ongoing and continuous requirement has been satisfied."[8] Four oil company defendants (one in *Agri-South* and

---

[5]*See* Opposition To Motion To Recuse, Exhibit B, page 5.

[6]*See* Exhibits C and D.

[7]After the LASC dismissed the claims of Global Marketing on the basis of the "subsequent purchaser rule," Global Marketing amended its petition in state district court to allege claims against the dismissed defendants under La. R.S. 30:16. The defendants asserted exceptions of *res judicata*, which were denied by the trial court. The Louisiana First Circuit denied the defendants writ applications. *See Global Marketing Solutions, L.L.C. v. Blue Mill Farms, et al.*, Docket Nos. 2016-cw-887, 888, and 911. Writ applications were then filed in the LASC. *See* Docket No. 16-CC-1963.

[8]180 F.3d 1326, 1338 (11th Cir. 1999).

three in *Global Marketing*) have now explicitly alleged in *verified pleadings* filed in the LASC that the LASC's orders recusing Justice Hughes in *Walton* and *Bundrick* support their respective motions to recuse. Based on these facts, there is no serious dispute concerning the existence of a real and imminent threat sufficient to satisfy the *Ex parte Young* requirement that the violation of federal law be "ongoing."

"In determining whether the doctrine of *Ex parte Young* avoids an Eleventh Amendment bar to suit, a court need only conduct a 'straightforward inquiry into whether [the] complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective.'"[9] However, this inquiry "does not include an analysis of the merits of the claim."[10] As noted by the Supreme court in *Idaho v. Coeur d'Alene Tribe of Idaho*, "[a]n allegation of an ongoing violation of federal law where the requested relief is prospective is ordinarily sufficient . . ."[11]

This Court's order and reasons are based primarily on the perceived absence of an "allegation of an ongoing violation" in the Intervenors' complaint. However, the Intervenors' complaint alleges clearly an ongoing violation, and also seeks prospective relief to remedy this ongoing violation. Paragraph 26 of the Intervenors' complaint alleges:

> By forcing Justice Hughes' recusal based on the contributions of the CCWL PAC, *four justices of the LASC have in effect limited the amount of money a person can contribute to a political action committee for the purpose of independent expenditures in support of a candidate, in violation of the First Amendment and Citizens United.* Doc. 28, pg. 18 (emphasis added)

The prayer of the complaint seeks prospective relief by requesting that this Court:

---

[9] *Verizon Maryland, Inc. v. Public Service Com'n of Maryland*, 122 S.Ct. 1753, 1760, 535 U.S. 635, 645 (U.S. 2002), quoting *Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261, 296, 117 S.Ct. 2028, 138 L.Ed.2d 438 (1997) (O'CONNOR, J., joined by SCALIA and THOMAS, JJ., concurring in part and concurring in judgment).

[10] *Verizon Maryland, Inc., supra*, at 1761, citing *Coeur d'Alene Tribe of Idaho*, 521 U.S. at 281.

[11] *Coeur d'Alene Tribe of Idaho, supra* at 2040.

> Issue a permanent injunction enjoining Defendants from recusing Justices Hughes and Knoll, and any other LASC justice from a case based on contributions to political action committees that supported their respective elections. Doc. 28, pg. 22.

The fact that four oil company defendants have now filed motions to recuse based specifically on the recusal orders issued in *Walton* and *Bundrick* shows that these recusal orders have been interpreted as applying to all future legacy cases assigned to Justice Hughes. Even though the LASC issued no reasons for its orders recusing Justice Hughes in *Walton* and *Bundrick*, it must be assumed that these recusal orders were based solely on the contributions to the CCWL PAC and its independent expenditures in support of Justice Hughes, as the motions to recuse in *Walton* and *Bundrick* relied exclusively on these contributions and expenditures. As evidenced by the pending recusal motions in *Global Marketing* and *Agri-South,* the facts alleged in the recusal motions in *Walton* and *Bundrick* can be utilized by *any oil company* defendant in *any future legacy case* before the LASC seeking the recusal of Justice Hughes. Thus, the continuing and ongoing effects of the recusal orders issued in *Walton* and *Bundrick* cannot logically be viewed as "one time" past violations. This Court's impermissibly narrow reading of the Intervenors' complaint cannot be squared with the allegations of the complaint itself, nor with the subsequent interpretations of the recusal orders by the oil company defendants in *Global Marketing* and *Agri-South*.

In addition, it is important to note that the *Walton* and *Bundrick* plaintiffs moved the LASC for a writ of mandamus and for rehearing of its decision to recuse Justice Hughes, and specifically requested that "[i]n the further alternative, and if and only if this Court denies the relief requested above, this Court should at a minimum issue written reasons for judgment on its recusal

determinations."[12] The LASC denied the requested relief.[13] This denial is alone sufficient to support a claim of an ongoing violation of federal law. In *Nigen Biotech, LLC v. Paxton,* the Fifth Circuit found that a government actor's refusal to justify its actions inflicted a continuing unconstitutional restraint on speech sufficient to demonstrate an ongoing violation.[14] When a violator provides no commitment, assurance, or guarantee of compliance with federal law, "the federal interest in asserting authority to enforce federal law" under *Ex parte Young* remains intact, even when the threat of a future violation is "unlikely."[15]

## II. INTERVENORS SHOULD HAVE BEEN GRANTED THE OPPORTUNITY TO AMEND

Even if the allegations of the Intervenors' complaint are viewed as insufficient to satisfy the ongoing violation requirement of *Ex parte Young*, this Court erred in failing to grant Intervenors leave to amend their complaint to comply with this requirement. When a plaintiff's complaint fails to state a claim, the Court should generally allow the plaintiff at least one chance to amend his or her complaint under Rule 15(a) before dismissing the action.[16] "Leave to amend should be freely given, and outright refusal to grant leave to amend without justification . . . is considered an abuse of discretion."[17] Factors for the Court to consider in determining whether a substantial reason to deny a motion for leave to amend under Rule 15 include "undue delay, bad faith or dilatory motive on the

---

[12]*See* rehearing and mandamus applications in the *Walton* and *Bundrick* cases, Exhibits E and F.

[13]*See* orders denying rehearing and mandamus application in the *Walton* and *Bundrick* cases, Exhibits G and H.

[14]*Nigen Biotech, LLC v. Paxton*, 804 F.3d 389, 395 (5th Cir. 2015).

[15]*Vickery v. Jones,* 100 F.3d 1334, 1347–48 (7th Cir. 1996).

[16]*Alford v. Chevron U.S.A. Inc.*, 13 F.Supp.3d 581, 609–10 (E.D.La. 2014)(Vance, J.)("Courts should 'freely give leave' to amend 'when justice so requires,'" citing Fed.R.Civ.P. 15(a)(2)) and *Filgueira v. U.S. Bank Nat'l Ass'n*, 734 F.3d 420, 422 (5th Cir.2013).

[17]*United States ex rel. Adrian v. Regents of the Univ. Of Cal.*, 363 F.3d 398, 403 (5th Cir. 2004) (citations omitted).

part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party, and futility of amendment."[18] None of these conditions exist in this case.[19]

Intervenors are entitled to at least one opportunity to amend their complaint.

### III. EXIGENT CIRCUMSTANCES CREATED BY THE EMERGENCE OF "DARK MONEY" IN LOUISIANA JUDICIAL ELECTIONS

One easily foreseeable consequence of the Defendant Justices' violations of federal law is the gross inequity that results from the infusion of mass amounts of "dark money" into judicial elections. In the recent election to replace retiring Justice Knoll in LASC District 3, the dark money PAC ironically named "Center For Individual Freedom" spent at least $738,000 dollars opposing the candidacy of Third Circuit Judge Jimmy Genovese and supporting the candidacy of Judge Marilyn Castle.[20] Because the Center For Individual Freedom was organized under 28 U.S.C. § 501(c)(4), it was not required to disclose its sources of funding. Two PACs supporting the candidacy of Judge Genovese were funded by lawyers whose names were disclosed in accordance with laws applicable to those PACs.[21] If a motion to recuse similar to the recusal motions filed in *Walton* and *Bundrick* is filed against Justice Genovese after he ascends to the LASC, the movants will have the unfair advantage of a publically available list of lawyer and non-lawyer contributors to the pro-Genovese PACs, whereas the contributors to the Center for Individual Freedom PAC will be shielded from

---

[18] *Wimm v. Jack Eckerd Corp.*, 3 F.3d 137, 139 (5th Cir. 1993).

[19] Intervenors acknowledge that strictly speaking, the present motion arises under Rule 59 and not Rule 15(a). Rule 15 "evinces a bias in favor of granting leave to amend." *Rosenzweig v. Azurix Corp.*, 332 F.3d 854, 863–64 (5th Cir. 2003). The Fifth Circuit has held that the same "limited discretion of Rule 15(a)" should be applied to motions to amend brought under Rule 59. *Id.* Under this standard, this Court should have granted the plaintiff and Intervenors leave to amend before entering a final judgment of dismissal.

[20] *See* Affidavit of Todd Wimberley, Exhibit I

[21] These are Restore Our Coast PAC and Napoleon PAC.

public disclosure. If Judge Castle would have won the race, she could not have been subjected to a motion to recuse based on the contributions to the Center For Individual Freedom because it was funded entirely by dark money, some of which was in all probability contributed by large multi-national corporations and oil industry organizations with anti-legacy agendas. Under these circumstances, the speech of pro-Genovese contributors is chilled, whereas the speech of the contributors to the Center For Individual Freedom is not. Further, in addition to the free speech and due process concerns described in the complaints filed by Justice Hughes and Intervenors in their respective complaints, motions to recuse Justice Genovese will necessarily implicate violations of equal protection due to differences in disclosure rules governing the pro- and anti-Genovese PACs.

Put simply, the threat to free speech and due process created by the LASC's recusal orders in the *Walton* and *Bundrick* cases is real, continuing, and imminent, and this Court should allow this case to proceed as expeditiously as possible. This Court's ruling seems to suggest that the application of the *Ex parte Young* exception under the circumstances of this case can be accomplished by a mechanistic application of the jurisprudence. However, *Papasan* cautions that "[f]or Eleventh Amendment purposes, the line between permitted and prohibited suits will often be indistinct: '[T]he difference between the type of relief barred by the Eleventh Amendment and that permitted under *Ex parte Young* will not in many instances be that between day and night.'"[22] As evidenced by the motions to recuse filed in *Agri-South* and *Global Marketing*, the chilling effect on free speech resulting from the *Walton* and *Bundrick* recusal orders is ongoing, and is clearly not "in the past." The determination of whether a federal violation is in fact "in the past" generally requires evidence

---

[22] *Papasan v. Allain*, 106 S.Ct. 2932, 2940, 478 U.S. 265, 278 (U.S. 1986), *Edelman*, 94 S.Ct., at 1357.

that the violation has ceased.[23] There is no such evidence here, as the LASC has not even seen fit to issue reasons for its egregious violations of free speech and due process resulting from its orders in *Walton* and *Bundrick*.

IV. **AMENDMENT OF THE COMPLAINT**

As shown above, "[a]n allegation of an ongoing violation of federal law where the requested relief is prospective is ordinarily sufficient . . ." in determining whether the doctrine of *Ex parte Young* avoids an Eleventh Amendment bar to a suit. Attached to this motion is a proposed amending petition that includes allegations of an ongoing violation.[24]

V. **CONCLUSION**

For the foregoing reasons, this Court should alter, amend or vacate its Order and Reasons and Judgment, or grant a new trial or reconsideration, or grant relief from the Order and Reasons and Judgment under Rule 60, and grant leave to amend the complaint in intervention.[25]

---

[23] *Vickery v. Jones*, 100 F.3d 1334, 1347 (7th Cir. 1996)("Although the court did, as the State Defendants point out, find it "unlikely" that the State Defendants would resume their prior practice, it noted that they had not clearly stated their intention to permanently cease using political affiliation as a criterion in hiring temporary workers.").

[24] *Coeur d'Alene Tribe of Idaho, supra* at 2040.

[25] As noted in Intervenors' motion, the *Walton* Intervenors do not join in this motion because their claims have been amicably settled in state court.

Respectfully submitted:

/s/ *Victor L. Marcello (9252)*
TALBOT, CARMOUCHE & MARCELLO
17405 Perkins Road
Baton Rouge, LA 70810
Phone: (225) 400-9991
Fax: (225) 448-2568
Donald T. Carmouche, Bar #2226
Victor L. Marcello, Bar # 9252
John H. Carmouche, Bar #22294
William R. Coenen, III, Bar #27410
Todd J. Wimberley, Bar #34862
Brian T. Carmouche, Bar #30430
Ross J. Donnes, Bar #33098
D. Adele Owen, Bar #21001
Leah C. Poole, Bar #35092
Caroline H. Martin, Bar #33308
vmarcello@tcmlawfirm.net

*Attorneys for Intervenors, Vincent Charles Bundrick, Cajun Pride, Inc., and Citizens for Clean Water and Land PAC, LLC*

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| ASSOCIATE JUSTICE<br>JEFFERSON D. HUGHES III,<br><br>                Plaintiff,<br><br>VERSUS<br><br>CHIEF JUSTICE BERNETTE J. JOHNSON,<br>ASSOCIATE JUSTICE GREGG G. GUIDRY,<br>ASSOCIATE JUSTICE MARCUS R. CLARK,<br>AND ASSOCIATE<br>JUSTICE JOHN L. WEIMER,<br><br>                Defendants. | *  CIVIL ACTION NO. 2:15-cv-07165<br>*<br>*<br>*  JUDGE SARAH S. VANCE<br>*<br>*<br>*  MAGISTRATE JUDGE<br>*  DANIEL E. KNOWLES, III<br>*<br>*<br>*<br>*<br>*<br>* |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## CERTIFICATE OF SERVICE

      I HEREBY CERTIFY that on the 15th day of November, 2016, I electronically filed the forgoing with the Clerk of Court by using the CM/ECF system. The forgoing has also been served electronically on all known counsel of record.

Kyle D. Schonekas
Mandie E. Landry
SCHONEKAS, EVANS,
McGOEY & McEACHIN, L.L.C.
909 Poydras Street, Suite 1600
New Orleans, LA 70112
kyle@semmlaw.com
landry@semmlaw.com
*Attorneys for Jefferson D. Hughes III*

Harry Rosenberg
Kim M. Boyle, T.A.
PHELPS DUNBAR, LLP
365 Canal Street, Suite 2000
New Orleans, LA 70130-6534
harry.rosenberg@phelps.com
kim.boyle@phelps.com
and
Jeff Landry, Attorney General
David G. Sanders, Assistant Attorney General
Louisiana Department of Justice
Litigation Division
1885 North 3rd Street
Post Office Box 94005 (70804-9005)
Baton Rouge, LA 70802
SandersD@ag.state.la.us
*Attorneys for Defendant Justices, Chief Justice Bernette J. Johnson, Associate Justice Greg G. Guidry, Associate Justice Marcus R. Clark, and Associate Justice John L. Weimer*

/s/ *Victor L. Marcello (9252)*